IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



RAYMOND WEST,

    Plaintiff,

v.                                                   Civil Action No. 2:12cv535

UNITED STATES OF AMERICA

    Defendant.

## OPINION AND ORDER

This matter is before the Court on the Defendant United States of America's ("Defendant" or "United States") Motion to Dismiss for Lack of Jurisdiction ("Motion"). Doc. 11.[1] For the reasons stated herein, the Court **GRANTS** the Motion and **DISMISSES** the Complaint **WITH PREJUDICE**.

### I. BACKGROUND

#### A. Factual Allegations[2]

This cause of action arises from events taking place between February 4th and 9th, 2011. On February 4, 2011, Plaintiff Raymond West's ("Plaintiff" or "West") fishing vessel, the Little Judy ("LJ") was damaged when Plaintiff ran into a rock jetty near the entrance to Little Creek in Norfolk, Virginia. Doc. 1 ¶ 6.[3] Plaintiff ran the LJ aground before he abandoned the vessel and

---

[1] The matter has been decided without a hearing, as the parties indicated the Motion could be decided without oral argument.

[2] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss.

[3] The LJ was a Chesapeake Bay Deadrise of wooden construction. Id. Little Creek is a small inlet on the shore of the Chesapeake Bay near a waterway with traffic from naval, commercial, and recreational vessels. Doc. 12 ¶ 2.

sought shelter. Doc. 1 ¶ 8. Then, Plaintiff contacted his brother, who subsequently notified the United States Coast Guard Marine Safety Office in Hampton Roads ("Coast Guard" or "Defendant"). Doc. 1 ¶ 9. Plaintiff and Defendant maintained communication throughout the night and into the next day. Doc. 1 ¶¶ 10, 11.

On February 5, 2011, the Coast Guard issued a Captain of the Port Order (COPO) directing Plaintiff to obtain a written report from a certified marine surveyor before moving the LJ. See Doc. 13, Ex. A; see also Doc. 12, Ex. B ("Barnes Decl."). The parties dispute when Plaintiff was informed of the COPO. This dispute is immaterial. On February 5, 2011, Plaintiff retained the services of Virginia Beach Diving Services ("VBDS") to refloat the LJ and move it to a nearby marina. Doc. 1 ¶ 11.

On February 7, 2011, Plaintiff began his efforts to salvage the LJ. VBDS arrived and began refloating the LJ. At some point in the process, Coast Guard personnel approached Plaintiff and provided him with a copy of the COPO, informed him of the obligation to obtain a survey report and salvage plan from a certified marine surveyor before moving the LJ, and advised Plaintiff of the penalties for ignoring these obligations.[4] Plaintiff and VBDS ceased their efforts. Doc. 1 ¶¶ 14-16; Doc. 13 ¶¶ 9-11; but see Doc. 12 ¶¶ 5-7.

Defendant provided Plaintiff with a list of marine surveyors. Plaintiff was eventually able to arrange for the LJ to be surveyed on February 9, 2011. Unfortunately, the LJ was destroyed by inclement weather the night of February 8, 2011. Doc. 1 ¶ 21, Doc. 13 ¶¶ 12-14; but see Doc. 12 ¶¶ 7-9; Doc. 12, Ex. 4 at ¶¶ 4-9 (Decl. of Shawn Simeral).

---

[4] Defendant decided to issue the COPO for safety reasons, pursuant to its authority in 33 U.S.C. § 1223(b)(3) and 33 C.F.R. § 160.11. Doc. 12 ¶ 3; Barnes Decl. ¶¶ 5-10 (detailing Coast Guard officials discussion of the LJ's accident, the threat posed by the location where the LJ was run aground, the risk of refloating the boat improperly given its wooden construction, and the potential impact of an unsuccessful salvage operation on water traffic, safety, and the Hampton Roads economy, as well as ways to mitigate the potential loss to Plaintiff).

## B. Procedural History

Plaintiff filed the Complaint in this action on September 27, 2012. Doc. 1. Defendant's Answer was filed on November 30, 2012. Doc. 4. The instant Motion was filed on April 19, 2013. Docs. 11, 12. Plaintiff's Opposition was filed on April 30, 2013, and Defendant's Reply was filed on May 6, 2013. Docs. 13, 14.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007); see Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). Although the court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.

In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §

1357 (1990)). The Court may also look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

**B. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal when the Court lacks subject matter jurisdiction. The plaintiff, having invoked the jurisdiction of the court, bears the burden of proving that subject matter jurisdiction is proper. A.W. ex rel. Wilson v. Fairfax Cnty. Sch. Bd., 548 F. Supp. 2d 219, 221 (E.D. Va. 2008).

A motion to dismiss for lack of subject matter jurisdiction may be presented in two different ways. Edwards v. Murphy-Brown, L.L.C., 760 F. Supp. 2d 607, 614 (E.D. Va. 2011) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). First, a Defendant may argue that the complaint fails to allege facts upon which subject matter jurisdiction can be based, in which case, all facts alleged in the complaint are assumed to be true, and the plaintiffs receives the same procedural consideration as with a Rule 12(b)(6) consideration. Id. In the second instance, a defendant challenges the veracity of the jurisdictional allegations of the complaint. Id. Then, a district court is to regard the allegations contained in the pleadings as mere evidence, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see also Williams v. United States, 50 F.3d 299, 304 (4th Cir.1995) (noting that a district court may weigh the evidence and resolve factual disputes regarding jurisdiction by considering evidence outside the complaint). While a Rule 12(b)(1) motion to dismiss is not converted into a motion for summary judgment, "[a] court should only grant a

12(b)(1) motion to dismiss 'if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Wilson, 548 F. Supp. 2d at 221 (quoting Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768).

## III. ANALYSIS

Defendant raises a factual and legal challenge to Plaintiff's allegations of subject matter jurisdiction. Doc. 12 at 6.[5] Essentially, Defendant argues that the Court lacks jurisdiction because Plaintiff's claims are barred by sovereign immunity. Id. This is because, Defendant argues: (1) Plaintiff improperly alleges that his action against the United States falls under a limited waiver of sovereign immunity contained in the Suits in Admiralty Act ("SAA"); and (2) additionally and alternatively, the United States' actions are exempted from any waiver of sovereign immunity by the discretionary function exception to the SAA.

### A. Sovereign Immunity

"'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999) (quoting F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994)); see also Circuit City Stores, Inc. v. E.E.O.C., 75 F. Supp. 2d

---

[5] While this Opinion and Order focuses on the lack of subject matter jurisdiction, the Court notes that the action could also be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Complaint simply does not allege facts establishing the elements of a maritime negligence action. The requirements of a maritime negligence claim parallel those of land-based claims. McMellon v. United States, 338 F.3d 287, 293 (4th Cir. 2003) vacated en banc on other grounds, 387 F.3d 329 (4th Cir. 2004). Thus, a Plaintiff must allege that the government owed them a duty of care, that the government breached that duty, and that the government's breach of duty was a proximate cause of the plaintiff's injuries. Id.; see also, Pearce v. United States, 261 F.3d 643, 647 (6th Cir. 2001).

Here, Count I of the Complaint simply alleges that this is a case of admiralty and maritime jurisdiction and indicates that the Government has consented to be sued pursuant to the SAA. Doc. 1 ¶¶ 1, 3. It does not identify the provision of admiralty or maritime law that gives Plaintiff a basis for relief, and does not appear to set forth the elements of any cause of action. Similarly, Count II of the Complaint simply sets forth facts. Doc. 1 at 2-4. Count III of the Complaint accuses Defendant of negligence, see Doc. 1 ¶ 23, but does not identify a duty that Defendant had toward the Plaintiff, nor does it appear to allege that Defendant was the actual cause of the Plaintiff's damages. See Doc. 1 ¶ 23. Without these elements of a negligence, the Plaintiff has failed to set forth a legal basis for relief. While this defect could be possibly be cured in an amended Complaint, the Court does not think Plaintiff could actually allege facts to create an actionable duty. Assuming arguendo, Plaintiff could allege such facts, Plaintiff would still face the insurmountable hurdle of sovereign immunity, discussed at length infra.

491, 503 (E.D. Va. 1999) aff'd, 232 F.3d 887 (4th Cir. 2000). "Sovereign immunity is jurisdictional in nature." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); see also United States v. Mitchell, 463 U.S. 206, 212 (1983). A waiver of sovereign immunity "must be unequivocally expressed in statutory text, and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996) (internal citations omitted). Moreover, such a waiver "will be strictly construed, in terms of its scope, in favor of the sovereign." Id.

## B. Whether Plaintiff's Cause of Action Falls Under the Limited Waiver of Sovereign Immunity Contained in the SAA

Defendant argues that the Plaintiff has not alleged facts establishing his cause of action falls under the SAA's limited waiver of sovereign immunity. Doc. 12 at 7; Doc. 1 ¶ 3. Specifically, Plaintiff has not alleged that he could bring a similar action for maritime negligence against a private person, a prerequisite for application of the SAA's waiver of sovereign immunity. Doc. 12 at 7; 46 U.S.C. § 30903(a).[6]

Defendant's argument relies on American Cargo Transport Inc. v. United States, where the Ninth Circuit observed that the text of the SAA clearly stated that the waiver of sovereign immunity "applies only where a private party would be liable under admiralty law for the same conduct." 625 F.3d 1176, 1181 (9th Cir. 2010); see also Faust v. S. Carolina State Highway Dep't, 721 F.2d 934, 938 n.2 (4th Cir. 1983) (noting that the SAA "renders the United States liable to suit to the same extent that a private person would be liable."). Thus, Defendant argues Plaintiff may only invoke the SAA's waiver of immunity where he alleges the existence of an analogous private cause of action.

---

[6] The SAA provides for a limited waiver of sovereign immunity:
> In a case in which, if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation...

46 U.S.C. § 30903(a).

To allege a claim of maritime negligence a Plaintiff must show that the Defendant owed Plaintiff a duty of care, the breach of which was the proximate cause of Plaintiff's injury. McMellon, 338 F.3d at 293. Plaintiff argues Defendant negligently interfered with Plaintiff's efforts to salvage the LJ and/or failed to help salvage the LJ before it was destroyed. Thus, it appears that Plaintiff asserts Defendant had a duty not to interfere as well as an affirmative duty to render aid. To invoke the limited waiver of sovereign immunity under the SAA, Plaintiff must demonstrate that a private person also had these duties toward Plaintiff.

Defendant argues that Plaintiff fails to do this, largely because the alleged wrongful conduct – Defendant's interfering COPO[7] – was action undertaken by the Coast Guard pursuant to federal law and regulations – which cannot create a duty of care that can be extended to private persons.[8] Doc. 12 at 10-12; see also, Hornbeck Offshore Transp., LLC v. United States, 569 F.3d 506, 512 (D.C. Cir. 2009) (holding that Plaintiff lacked subject matter jurisdiction because Plaintiff could not claim a local analog, as the alleged injury in the case was grounded entirely in federal law). Moreover, Defendant argues, Plaintiff has not, and cannot identify a local analog that establishes a duty to render assistance. Because the Complaint does not identify any tort duty applicable to a private individual under maritime law, and Plaintiff's allegations have no private person analog under maritime law, Defendant argues the SAA's waiver of sovereign immunity is inapplicable. Doc. 12 at 12.

Plaintiff does not rebut Defendant's arguments, or set forth evidence supporting its allegation that its claim falls within the limited waiver of sovereign immunity found in the SAA. Doc. 13 at 6-7. Instead, Plaintiff simply reiterates the proposition that "the United States is

---

[7] Plaintiff disputes this framing and alleges that Defendant's wrongful conduct was the failure to render aid to salvage the vessel, despite knowledge it was in imminent danger. The Court acknowledges Plaintiff's objection, and notes it is also unavailing, as there is also no private person analog for Plaintiff's alternate framing.
[8] Defendant was authorized to issue the COPO by 33 U.S.C. § 1223(b)(3) and 33 C.F.R. § 160.11.

generally liable in admiralty under the same circumstances in which liability could be found against a private party." Doc. 13 at 7. Plaintiff fails to identify any private person analog to his cause of action. Doc. 12 at 10; see also Doc. 13 at 6. In attempting to reframe the issue and outline a cause of action, Plaintiff argues that the Defendant "was advised of an impending storm and recklessly chose to ignore the warning and left the vessel in harm's way." Doc. 13 at 7. However, Plaintiff fails to identify any provision of maritime or admiralty law that imposes an affirmative duty to render assistance to a disabled vessel upon a private person.[9]

Here, Plaintiff has not alleged facts, or set forth evidence, suggesting the existence of a private cause of action under admiralty law under similar circumstances. Thus, Plaintiff's assertion of the SAA's limited waiver of sovereign immunity must fail. 46 U.S.C. § 30903(a); see also Am. Cargo Transp., Inc., 625 F.3d at 1181; Faust, 721 F.2d at 938 n.2. Without the United States' express consent, Plaintiff's lawsuit is barred by the doctrine of sovereign immunity. Blue Fox, Inc., 525 U.S. at 260. Because the Court lacks jurisdiction to hear claims barred by the doctrine of sovereign immunity, Defendant is entitled to prevail as a matter of law. Wilson, 548 F. Supp. 2d at 221. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss on this ground.

### C. Whether the Discretionary Function Exception to the SAA Exempts the United States From Any Waiver of Sovereign Immunity

Additionally and alternatively, Defendant argues that Plaintiff's allegations of subject matter jurisdiction are invalid because Defendant's actions are exempt from tort liability under the discretionary function exception. The SAA incorporates a discretionary function exception

---

[9] "Under both common law and admiralty law, a private party has no affirmative duty to rescue or salvage a vessel in distress." DFDS Seacruises, 676 F. Supp. at 1200 (citing Basic Boats, Inc. v. United States, 352 F.Supp. 44, 48 (E.D.Va.1972). Moreover, the Coast Guard does not have an affirmative, mandatory duty to render assistance in all circumstances. See 14 U.S.C. § 88(b)(1) ("the Coast Guard **may** render aid to persons and protect and save property at any time and at any place at which Coast Guard facilities and personnel are available and can be effectively utilized.") (emphasis added).

8

that mirrors the scope of the exception found in the FTCA. McMellon v. United States, 387 F.3d 329, 349 (4th Cir. 2004). The FTCA's discretionary function exception provides that a waiver of sovereign immunity does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).

To determine whether the conduct of a federal agency or employee fits within the discretionary function exception the court must consider whether the challenged conduct involves an "element of judgment or choice." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988). The exception will not apply where a course of action is specifically prescribed. Id. If the challenged conduct involves judgment, the court must determine whether the judgment is the kind the exception was designed to shield – "governmental actions and decisions based on considerations of public policy." Id. at 537; see also United States v. Gaubert, 499 U.S. 315, 324 (1991) ("When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.").

The plaintiff bears the burden of proving the discretionary function exception does not apply. Indem. Ins. Co. of N. Am. v. United States, 569 F.3d 175, 180 (4th Cir. 2009). If the

exception applies, the plaintiff's claim must be dismissed for lack of subject matter jurisdiction. Id. Thus, to survive a motion to dismiss, the complaint must "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324-25.

Plaintiff does not appear to have addressed the discretionary function exception in its Complaint, an observation shared by Defendant and the Court. Doc. 14 at 6-7. This is sufficient to fell Plaintiff's claims, however, Defendant also argues that the exception applies to the Coast Guard's decisions and actions in this instance. Defendant's alleged "interference" – the order requiring Plaintiff to obtain a marine survey report and salvage plan before moving the LJ – was communicated verbally at the site of the accident as well as in the COPO. The authority to make such an order (no matter the format) was delegated by Congress in 33 U.S.C. § 1223(b)(3):

> The Secretary may order any vessel, in a port or place subject to
> the jurisdiction of the United States or in the navigable waters of
> the United States, to operate or anchor in a manner he directs if . . .
> by reason of weather, visibility, sea conditions, port congestion,
> other hazardous circumstances, or the condition of such vessel, he
> is satisfied that such directive is justified in the interest of safety.

Thus, Defendant argues, the decision to order Plaintiff to take certain steps before moving the LJ was a decision that required an element of judgment or choice. Berkovitz, 486 U.S. at 536; Doc. 12 at 16. According to Defendant, the decision to issue the order was made only after officials discussed and balanced the competing interests implicated by the LJ's accident. Doc. 12 at 16.

In Defendant's view, the Coast Guard's discretionary actions and decisions were also grounded in public policy considerations. Doc. 12 at 17. In support of this view, Defendant points to the policy goals articulated in the statement of policy for the Ports and Waterways Safety Act, the Act extending the Coast Guard Discretion to issue the COPO:

> That Congress finds and declares -- (a) that navigation and vessel
> safety, protection of the marine environment, and safety and

security of United States ports and waterways are matters of major national importance; (b) that increased vessel traffic in the Nation's ports and waterways creates substantial hazard to life, property, and the marine environment; (c) that increased supervision of vessel and port operations is necessary in order to--(1) reduce the possibility of vessel or cargo loss, or damage to life, property, or the marine environment[.]

33 U.S.C. § 1221. Defendant argues these policy goals were balanced when deciding whether to issue the COPO, and are contained in the language of the COPO itself. Doc. 12 at 17; see also Doc. 12 ¶ 3; Barnes Decl. ¶¶ 5-10.

Plaintiff concedes the existence of the discretionary function exception, but argues that it is not applicable to the instant action because the exception is "not absolute." Doc. 13 at 7. If it were, Plaintiff argues, "no action could ever be brought against the United States because, by its very nature, all actions taken by a government are governmental actions." Id. Thus, Plaintiff argues, the exception imposes an obligation upon the government to act "responsibly" and as a "reasonable person." Id. In support of this assertion, Plaintiff cites to a 1955 case where the Coast Guard was held liable for damages caused to a barge by its negligent failure to maintain a lighthouse. Indian Towing Co. v. United States, 350 U.S. 61(1955).

Plaintiff's arguments are unavailing. First, Plaintiff mischaracterizes the doctrine. The only government actions that are protected are permissible exercises of discretion that are grounded in public policy considerations. Berkovitz., 486 U.S. at 536. Second, Plaintiff's argument that the exception does not relieve the government of that the requirement to act responsibly and reasonably is incorrect. See 28 U.S.C. § 2680(a); Dalehite v. United States, 346 U.S. 15, 33 (1953) ("abuse connotes both negligence and wrongful acts in the exercise of the discretion"); see also Varig Airlines, 467 U.S. at 808. Third, the case upon which Plaintiff's

argument relies is distinguishable.[10] Finally, the Complaint does not allege that the discretionary function exception does not apply. Gaubert, 499 U.S. at 324-25. Indeed, the Complaint, the Opposition, and Plaintiff's factual contentions in the Final Pretrial Order are all silent on the issue.[11]

Because Plaintiff alleges no facts regarding the application of the discretionary function exception to rebut Defendant's evidence that the exception applies in this case, there appears to be no factual dispute on this issue, and Defendant is entitled to prevail as a matter of law. Accordingly, the Court **GRANTS** Defendant's Motion, and **DISMISSES** the Complaint **WITH PREJUDICE.**

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's **MOTION** and **DISMISSES** the Complaint **WITH PREJUDICE.**

It is so **ORDERED.**

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: May 31, 2013

---

[10] Indian Towing involved the Coast Guard's alleged failure to maintain a lighthouse, which caused a barge to run aground. 350 U.S. at 62. Here, however, Plaintiff's vessel was disabled by Plaintiff's negligent operation, and the alleged wrongful conduct is the failure to render assistance in salvaging efforts/interference with salvaging efforts.
[11] Plaintiff cannot expand upon his factual contentions set forth in the Final Pretrial Order and there are no factual allegations on the issue nor are there any factual allegations that by reasonable inference would implicate this issue.